## DINERIS v. PHELAN et al.

No. 3952.    Decided October 8, 1923.    Rehearing denied November 21, 1923.    (219 Pac. 1114.)

1. DEEDS—CONTEMPORANEOUS DEEDS PRESUMED EXECUTED AND DE-LIVERED IN ORDER OF PRIORITY NECESSARY TO EFFECTUATE PARTIES' INTENTION. Deeds executed and delivered at the same time as part of the same transaction are presumed to have been executed and delivered in the order of priority necessary to give effect to the parties' intention.

2. DEEDS—FINDING AS TO VENDOR'S OWNERSHIP AT TIME OF SALE SUSTAINED AS AGAINST CLAIM OF PRIOR CONVEYANCE TO WIFE. A contract by a husband and wife to sell realty and a contempo-

raneous joint deed to be delivered to vendee on payment of the purchase price *held* to show that the husband was the owner of the property and that the wife joined in the deed merely to release her contingent rights, as against the contention that he conveyed the premises to his wife by another contemporaneous deed alleged to have been executed before, but not deliverd until after, the contract was executed.

3. WITNESSES—ATTORNEY'S TESTIMONY AS TO CONTENTS OF CLIENT'S LOST DEED AND STATEMENTS TO GRANTEE AND ANOTHER AT TIME OF EXECUTION HELD NOT INCOMPETENT. An attorney's testimony as to the contents of a lost deed executed by his client to the latter's wife contemporaneously with a joint deed to a purchaser, statements by grantor to his wife at the time and to the purchaser in the presence of the attorney and the wife, *held* not incompetent under Comp. Laws 1917, § 7124, subd. 2, relating to privileged communications by a client.

4. WITNESSES—WITNESS MAY TESTIFY AS TO LOSS OF INSTRUMENT EVIDENCING TRANSACTION WITH DECEDENT. An interested witness may testify as to loss of an instrument evidencing a transaction with a decedent, though he cannot testify as to the contents.

5. DEEDS—VENDOR'S CONVEYANCE OF BENEFICIAL INTEREST AND ASSIGNMENT OF FUTURE PAYMENTS TO WIFE HELD SHOWN; "RIGHTS AND PRIVILEGES." In interpleader proceedings by a purchaser of realty against vendor's widow and mother, both of whom claimed the payments, evidence *held* to show that vendor, by a warranty deed, executed contemporaneously with the contract of sale, conveyed to his wife the beneficial interest in the premises and assigned to her the future payments; the right to receive them and repossess the property on the purchaser's default being the only "rights and privileges" subject to conveyance by vendor under Comp. Laws 1917, § 4881.[1]

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie,* Judge.

Action by Angelo Dineris against Juniata A. Phelan, individually and as administratrix of the estate of Daniel W. Phelan, deceased, and another. From a judgment for decedent's estate against the named defendant, she appeals.

AFFIRMED IN PART, REVERSED IN PART, and remanded, with directions.

*Stewart, Stewart & Alexander,* of Salt Lake City, for appellant.

*Walton & Walton, Willard Hanson,* and *B. L. Liberman,* all of Salt Lake City, for respondents.

1 *Haslam* v. *Haslam,* 19 Utah, 1, 56 Pac. 243; *Schenck* v. *Wicks,* 23 Utah, 576, 65 Pac. 732.

GIDEON, J.

On October 9, 1917, Daniel W. Phelan, now deceased, and his wife, Juniata A. Phelan, entered into a written contract with plaintiff, Dineris, by the terms of which Phelan and wife, as parties of the first part agreed to sell, and Dineris agreed to buy certain real property located in Midvale, Salt Lake county, Utah. Under the terms of the agreement an initial payment was made, and the balance of the contract price was to be paid in monthly instalments of $250 each. Daniel W. Phelan died intestate on September 5, 1918. On October 4, 1918, Juniata A. Phelan, as the widow, was appointed and qualified as administratrix of his estate. Daniel W. Phelan left no lineal descendants. His widow Juniata A. and his mother, Catherine Phelan, were therefore entitled to the entire estate. Catherine Phelan died testate on February 23, 1902, pending the present action. The defendant Ellen Phelan, on March 3, 1921, qualified as the executrix of the last will and testament of Catherine Phelan deceased, and in that representative capacity, was, by order of the court made defendant in this action. In May following, by order of court made pursuant to stipulation of the parties, Ellen Phelan was appointed, and since said time has been, the qualified and acting administratrix ad litem to represent the interests of the estate of Daniel W. Phelan herein. On said October 9, 1917, and contemporaneously with the execution of the contract with Dineris, Daniel W. Phelan and his wife executed a special warranty deed conveying the premises described in the contract of sale to Dineris. This deed was to be delivered upon the final payment of the stipulated contract price. On

the same day Daniel W. Phelan made, executed, and delivered a warranty deed conveying the same premises to his wife. This deed was lost, and was not therefore produced at the trial. Further reference will hereinafter be made to that deed.

By the terms of the written contract for the sale of the real estate Dineris took possession of the property, and has since that time had possession of the same, and has collected and received the rents accruing from the buildings located thereon. He has also paid the taxes assessed against the property. By oral direction plaintiff paid the monthly instalments into the Midvale State Bank, and, during the lifetime of Daniel W. Phelan, the same were credited to his account in said institution. Subsequent to the death of Phelan plaintiff continued to make the payments to said bank. A controversy arose between Juniata A. Phelan and Catherine Phelan as to who was entitled to have the monthly payments falling due under the terms of the real estate contract. Juniata A. Phelan claimed the same as her individual property, and the mother claimed them as payments belonging to the estate of her son. The plaintiff, being of the opinion that he could not with safety to himself pay the monthly instalments to either the estate of Daniel W. Phelan or to Juniata A. Phelan until it was judicially determined who was entitled to the same, brought this action against Juniata A. Phelan, as administratrix of the estate of Daniel W. Phelan, Juniata A. Phelan, and Catherine Phelan. The prayer of the complaint is that the defendants be required to interplead and litigate their several claims among themselves and that the court determine to whom the instalments may be paid by the plaintiff, and that his title in the contract be quieted and confirmed as against all of the defendants.

Juniata A. Phelan answered and denied the right of the estate to any part of the monthly payments, and asked for judgment decreeing her to be entitled to receive the same and to be the owner thereof. Ellen Phelan, as administratrix ad litem and in her representative capacity as the executrix of the last will and testament of Catherine Phelan, deceased, by her pleadings, asked that the estate of Daniel W. Phelan

be adjudged to be the owner of and entitled to receive the
monthly payments. In a cross-complaint as administratrix
ad litem she asked judgment against Juniata A. Phelan for
the amount of the monthly payments made since the death
of Daniel W. Phelan and received by Juniata A. Phelan.

The court made findings of fact, conclusions of law and
entered judgment denying the right of Juniata A. Phelan
to the said monthly payments; entered judgment against her
in favor of the estate of Daniel W. Phelan for the amount
that she had received since the death of her husband. From
that judgment Juniata A. Phelan appeals.

The errors assigned assail the findings of fact as not being
supported by the evidence; also as being contrary to the
weight of the evidence. The assignment also asserts that the
facts found do not support the conclusions of law or the
judgment entered.

The court found that on October 9, 1917, Daniel W. Phelan
was the owner of the real estate described in the contract
made with Dineris; that Juniata A. Phelan joined in the con-
tract simply for the purpose of releasing her contingent rights
therein as the wife of Daniel W. Phelan. In our judgment
those findings clearly reflect the evidence. It is not disputed
that prior to the making of the contract and the deeds in-
volved herein Daniel W. Phelan owned the real property in
question. It is insisted, however, that it affirmatively appears
from the testimony that Daniel W. Phelan executed a deed
conveying the premises to his wife prior to entering into this
contract. We find no competent testimony in the record sup-
porting that claim. Mr. Moffat, an attorney at law, was per-
mitted to testify respecting what was said between the par-
ties at the date the deed and the other papers were executed.
He was not able to state definitely whether the deed was ex-
ecuted prior to the execution of the contract. But be that
as it may, the deed was clearly not delivered until after the
contract had been executed. The contract itself refutes the
claim that Daniel W. Phelan was not the owner of the prop-
erty and was not the party selling the property to plaintiff.
The contract reads:

"This agreement made and entered into this the 9th day of

October, 1917, by and between Daniel W. Phelan and Juniata A. Phelan, his wife, parties of the first part, * * * and Angelo G. Dineris, party of the second part."

The deed conveying the property to plaintiff Dineris at the same time reads:

"Daniel W. Phelan and Juniata A. Phelan, his wife, grantors, convey and warrant," etc.

The contract and this deed clearly indicate that it was recognized by all the parties that Daniel W. Phelan was the owner of the property and that Juniata A. Phelan executed the deed as his wife and not as the owner of the real property being sold to and bought by Dineris.

"Where deeds are executed and delivered at the same time and as part of the same transaction, the law will presume that they were executed and delivered in the order of priority necessary to give effect to the intention of the parties." 18 C. J. p. 415.

The witness Moffat was an experienced attorney. He was advised to prepare a contract agreeing to sell these premises to Dineris. He was also advised that it was desirable to have a deed prepared and executed which could be delivered to the buyer when payments had been made as provided by the terms of the contract. If the property had been conveyed to the wife, Juniata A. Phelan, prior to the execution of the contract, Mr. Phelan was not a necessary party to the transaction. It does not seem at all probable or reasonable to suppose that an attorney would have prepared a contract for the sale of real property that belonged to the wife of Phelan and designated the parties as they were designated in the contract and in the deed, if the wife were the holder of the legal title as well as the beneficial interest in the property.    **1, 2**

Objection was made on the part of the administratrix ad litem of the Daniel W. Phelan estate to the witness Moffat testifying, the objection being based on Comp. Laws Utah 1917, § 7124, subdiv. 2, wherein it is provided that an attorney may not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional employment. The contents of the lost deed were no    **3**

part of a communication made to the attorney by the deceased. Neither were the statements made by the deceased to his wife at the time of the execution and delivery of the deed or statements made to Dineris in the presence of the attorney and Mrs. Phelan. Mrs. Phelan testified that the instrument or deed was lost. She was competent to so testify.

"An interested witness may testify as to the loss of an instrument evidencing a transaction with a decedent although he cannot testify as to the contents of such lost instrument." 40 Cyc. p. 2328.

See, also, *Felz* v. *Felz's Estate,* 170 Wis. 550, 174 N. W. 908.

The court was justified in holding in effect that the deed executed by Daniel W. Phelan conveying the property to his wife was subsequent in time to the contract made with plaintiff and the deed conveying the property to plaintiff.

In one of its findings the court also found that—

"Contemporaneously with the execution and delivery of said contract referred to in finding No. 6 hereof, the said Daniel W. Phelan executed and delivered to the defendant Juniata A. Phelan a certain document, in form a warranty deed, to the premises covered by said contract; but it was not the intention of either of said parties to said warranty deed, in form, that the same should then operate either as a conveyance of the beneficial interest in said premises or as an assignment of the purchase money to be paid by the plaintiff under said contract."

This finding is vigorously assailed as not finding any support in the testimony, and as being, on the contrary, clearly against the testimony, for the reason that it appears that it was the intention of the parties to the said deed that the same should operate immediately and convey to the defendant Juniata A. Phelan the legal and equitable title to the premises described in the deed and also a conveyance and assignment of the beneficial interest in said premises and purchase money to be paid by plaintiff under the contract. In our judgment the testimony clearly supports the finding that a deed was executed and delivered by Daniel W. Phelan to his wife; also that the paper was in form a warranty deed. Whether the same should operate as a conveyance of the beneficial interest in the premises or an assignment of the purchase money to be paid by plaintiff is a more difficult problem.

The determination of that question is conclusive of the rights of the parties to this action.

The finding that it was not the intention of the parties that the deed should convey the beneficial interest or constitute an assignment of the payments to be made by plaintiff is without support in the testimony, unless such finding or conclusion can be deduced from the conduct of the parties or the legal effect to be given the conveyance uninfluenced by their acts. It is not claimed that there was any consideration for the conveyance except the desire on the part of Phelan to make a gift of the property to his wife. The consideration named in the deed is $1 and other good and valuable considerations. The witness Moffat testified that on the date upon which the contract was signed, and at the time Daniel W. Phelan, his wife, and Dineris came to his office, Mr. Phelan said in substance to Dineris:

"Angelo, we have prepared two deeds in addition to this contract here, and I am delivering them to Mrs. Phelan, and if the terms of the contract are complied with you will get your deed."

The witness Moffat also testified to the effect that after the execution of the contract and the delivery of one copy to the buyer, Mr. Phelan handed the contract, together with the two deeds, to his wife and she placed them in a handbag and carried them away with her. The husband and wife apparently departed from the office together. One of two witnesses testified relative to conversations had with Daniel W. Phelan about the time of, or subsequent to, the execution of the contract. In these conversations it is claimed that Phelan said that the property being sold to plaintiff belonged to his wife. This testimony, if competent, clearly indicates that Mr. Phelan considered that he had conveyed the property to his wife. We are, however, not considering the weight or the competency of the testimony of these witnesses in determining the rights of the parties to this appeal.

The plaintiff subsequent to the date of the contract, and during the lifetime of Phelan, made the monthly payments to the Midvale State Bank as directed, and the payments were credited to Phelan's account with that bank. Both Phelan and his wife issued checks against the account. Much

is said in the argument of respondents respecting the fact that the payments were credited to the account of Daniel W. Phelan during his lifetime as evidencing the fact that it was not the intention of Phelan or the understanding of his wife that the lost deed was intended to convey to her the beneficial interest or to constitute an assignment of the monthly payments to be made by Dineris. We regard that fact as of very little significance. It is not an uncommon thing for a husband and wife to have their funds deposited in either the name of the husband or the wife, nor that the account is made subject to the check of either or both. The testimony is undisputed that both Mr. and Mrs. Phelan drew checks against the account, whenever desired, up to the date of the death of Mr. Phelan. At one time shortly after the initial payment of $1,000 and the first monthly instalment of $250 were paid, Mrs. Phelan drew a check against the account in favor of her brother-in-law for $1,250. That, however, was subsequently repaid.

By the terms of the contract Dineris took possession of the property described in the contract. He received the rents from the property and the buildings thereon, and in every way exercised ownership over the property. He was required to and did pay the taxes on the property, and was entitled, upon completion of the payments, to receive a deed conveying title to him. It must be assumed that Daniel W. Phelan intended to convey some interest to his wife by the execution and delivery of the deed; otherwise it would have been a useless, and vain thing to make a deed. If he did not intend to convey the beneficial interest and that the deed should be an assignment of the payments thereafter to fall due, then the only possible interest the deed conveyed was the right to repossess and take the property in the event Dineris failed to make the payments as provided in the contract. Comp. Laws Utah 1917, § 4881, referring to forms of warranty deeds, provides:

"Such deed, when executed as required by law, shall have the effect of a conveyance in fee simple to the grantee, his heirs, and assigns, of the premises therein named, together with all the appurtenances, rights and privileges thereto belonging," etc.

As indicated, the only rights and privileges belonging to Daniel W. Phelan in the premises described in the deed were the right to have and receive the monthly payments as they accrued under the contract of sale with Dineris and his right to repossess the property upon plaintiff's default in payment.

Under the title "Vendor and Purchaser," in 27 R. C. L., at p. 560, it is said:

"So long as the legal title remains in the vendor it may be conveyed by him, and the conveyance will pass all his right in the land, including, as a general rule, the right in equity to receive the unpaid purchase money and enforce the vendor's lien therefor."

The first headnote to *Southern Bldg. & Loan Ass'n* v. *Page,* 46 W. Va. 302, 33 S. E. 336, which reflects the opinion of the court, reads:

"A general warranty deed, without limitation, reservation, or exception, conveys all the grantor's right, title, and interest, both legal and equitable, in and to the property embraced therein, including the right of retention of the title to secure the unpaid purchase money due and owing from a prior recorded title-bond purchaser of an undivided interest in such property, and operates as a transfer of such unpaid purchase money to the grantee; and after due recordation of such deed, and notice thereof, such title-bond purchaser cannot pay such unpaid purchase money to his vendor, the grantor in such absolute deed, except at his own risk and peril, but must pay the same to the grantee before he can demand conveyance of the retained legal title."

See, also, *Turk* v. *Skiles,* 45 W. Va. 82, 30 S. E. 234.

The respondent Ellen Phelan relies upon two former opinions of this court. *Haslam* v. *Haslam,* 19 Utah, 1, 56 Pac. 243, and *Schenck* v. *Wicks,* 23 Utah, 576, 65 Pac. 732. Certain language found in those opinions would seem to support her claim or contention. The precise question here presented was not, however, involved in either of those actions. We shall not pause here to state the issues in those cases. It must suffice to say that an examination of the facts and issues presented by the pleadings will readily disclose that the decisions or determination of the issues in those cases did not present or necessarily involve a consideration of the principle that should govern the rights of the parties in this action. Under all the circumstances in this case it must be apparent that Phelan executed and delivered the

deed for no other purpose than to assign or convey to his wife his beneficial interest in the premises described in that deed.

The finding of the court, and the conclusion of law and judgment following that finding, that it was not intended by the parties that the warranty deed executed by Daniel W. Phelan to his wife should convey the beneficial interest or operate as an assignment of the monthly payments from plaintiff under the contract, are erroneous, and should be set aside and annulled, and a finding made that said Phelan by the said deed conveyed to his wife the beneficial interest in the premises and also assigned the monthly payments thereafter to fall due to her. In all other respects the judgment · is affirmed. The cause is therefore remanded to the district court of Salt Lake County, with directions to modify and correct the findings, conclusions of law, and enter judgment in conformity with the views herein expressed. Costs of this appeal will be taxed against the estate of Daniel W. Phelan, deceased.

WEBER, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.